UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOE MIDDLETON, JR.,                                Case No. 1:19-cv-342

    Plaintiff,                                         Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joe Middleton, Jr. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review.[1] As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

On July 8, 2016, Plaintiff filed a protective application for Supplemental Security Income ("SSI"), alleging disability beginning August 19, 2015 based upon several physical impairments. After his application was denied initially and on reconsideration, he requested a hearing before an administrative law judge ("ALJ"). On October 3, 2018,

---

[1]The parties have consented to disposition by the undersigned magistrate judge. *See* 28 U.S.C. § 636(c).

1

ALJ Stuart Adkins conducted an evidentiary hearing at which Plaintiff appeared and testified, along with a vocational expert. (Tr. 58-89).

Plaintiff was 57 on the date of his alleged onset of disability, with a high school education. He last worked for 18 years as an automobile salesman, but left that position in 2007. The ALJ found that Plaintiff had multiple severe impairments including obesity, degenerative disc disease of the lumbar spine, hypertension, gout, gastro-esophageal reflux disease ("GERD"), osteoarthritis, and pulmonary embolism. (Tr. 15). However, none of Plaintiff's impairments, alone or in combination, met or medically equal any Listed Impairment in 20 C.F.R. Part 404, Subpart P, App. 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 16). Plaintiff "agrees generally with the summary of medical facts" by the ALJ, (Doc 9 at 2), and does not dispute the ALJ's determination that his impairments did not meet or equal any Listing.

After considering the record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") ability to perform work at the "light" exertional level, with additional nonexertional limitations. Specifically, the ALJ found Plaintiff

> can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for about 6 hours and sit for about 6 hours in an 8-hour workday; would be permitted to alternate between sitting and standing every 20 minutes while at the workstation; can occasionally climb ladders, ropes, or scaffolds; can frequently stoop; and would need to use a single point cane.

(Tr. 16). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff retained the ability to perform his prior work as an automobile salesperson at the light, skilled level. (Tr. 19). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's November 29, 2018 decision as the final decision of the Commissioner.

2

In his appeal to this Court, Plaintiff argues that the ALJ failed to give controlling weight to the opinion of his treating physician, who opined that Plaintiff could perform (at most) sedentary work. Had the ALJ limited Plaintiff to sedentary work, Plaintiff maintains that he would have been entitled to an age-related presumption of disability under the Medical-Vocational Guidelines. *See* 20 C.F.R. Part 404, Subpart P, Appx 2.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion....

3

> The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. *See* 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. The ALJ's Assessment of Plaintiff's Treating Physician's Opinions

Social security regulations generally provide for an order of hierarchy in the evaluation of medical opinion evidence, with the opinions of treating physicians to be given the most weight, and the opinions of examining consultants to be given greater

4

weight than the opinions of non-examining consultants. For claims filed before March 27, 2017 like the one presented, the regulations specify that "[g]enerally," an ALJ is required to "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you," with the most weight, or "controlling weight" to be given to treating physicians. 20 C.F.R. § 404.1527(c)(1) and (2). However, despite that general presumption, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96–2p, 1996 WL 374188, at *2 (July 2, 1996). In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion, such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Com'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c)(2).

In September 2018, Plaintiff's treating physician, Dr. Kaiser, completed a medical opinion form regarding Plaintiff's physical condition. (Tr. 426-434). Dr. Kaiser opined that Plaintiff has a 50% limitation in his lumbar spine range of motion, and has weakness in his legs "if walks > 30 min." (Tr. 428-429). He further opined that Plaintiff experiences pain in his low back, buttocks, thighs, and calves; that the leg pain is worse than the back pain; and the leg pain is worsened by standing and walking. (Tr. 430). He states that Plaintiff "uses crutches, a cane and wc [wheelchair]," but simultaneously opined that Plaintiff does not medically <u>require</u> any assistive devices and is able to walk at a reasonable pace on rough or uneven surfaces, can use public transportation, and carry out routine ambulatory activities such as shopping and banking. (Tr. 431). Despite

5

leaving many parts of the form blank and including no objective findings at all, Dr. Kaiser opined that Plaintiff has significant exertional limitations, including being able to stand and/or walk no more than 1-2 hours in an 8-hour workday and lift or carry no more than 10 pounds. (Tr. 432).

Dr. Kaiser's opinions, if accepted, would have restricted Plaintiff to no more than sedentary work. And Plaintiff insists that a restriction to sedentary work, in combination with his age, would have entitled Plaintiff to a presumption of disability under the Medical-Vocational Guidelines.[2] However, the ALJ declined to give Dr. Kaiser's opinions "controlling weight," and instead gave it "little weight." (Tr. 18-19). The ALJ acknowledged Dr. Kaiser's treating physician status but offered the following justification:

> Dr. Kaiser's opinion cannot be afforded controlling weight because it is inconsistent with substantial evidence of record…. Dr. Kaiser's opinion cannot be afforded great deference because it is not supported by objective physical examinations, his own treatment notes, the severity of diagnostic findings, or other physician opinion evidence. Dr. Kaiser has known the claimant since at least 2016; however, the claimant has not had frequent treatment with Dr. Kaiser (2F, 5F). Instead, most of the claimant's appointments with Dr. Kaiser occurred in 2018, …contain mostly prescription or diagnostic orders, and do not contain objective physical examination findings. For instance, on May 11, 2018, the claimant presented to Dr. Kaiser for a medication refill, and reported stable gout, and difficulty standing (5F/18). Dr. Kaiser did not perform an objective examination, and instead assessed the claimant with gout…. The appointment did not include a physical examination. On another date, the claimant called asking Dr. Kaiser for hypertension medical refills…. It appears Dr. Kaiser made assessments based largely on the claimant's own reports, instead of basing the findings on objective physical examinations, as evidenced by the lack of detail or examination findings in his treatment notes (5F). Dr. Kaiser concluded the claimant has extreme physical

---

[2]The Commissioner disputes this contention, noting that the Grid Rules do not apply when a claimant's exertional RFC does not fully coincide with a specifically defined exertional range of work or when a claimant has a combination of exertional and non-exertional limitations. See 20 C.F.R. Pt. 404, Subpt. P, Appx. 2, §§ 200.00(d ) and (e); see also SSR 83-12, 1983 WL 31253 at **3-4 (stating that when a claimant's exertional limitations are somewhere "in the middle," the ALJ should use the grids as a framework and elicit testimony from a vocational expert). The Court finds no need to determine whether, hypothetically, the Grid Rules would have mandated any particular result if Plaintiff had been restricted to sedentary work because the undersigned finds no error in the ALJ's determination that he was not so restricted.

>limitations, consistent with the claimant's own complaints, but not consistent with the level of treatment required, the objective diagnostic findings of record, or objective examinations. Dr. Kaiser's findings are inconsistent with multiple other physician opinions of record, including Dr. Swedberg's conclusions, which are not as recent as Dr. Kaiser's opinion but which are accompanied by objective examination notes and findings. Overall, Dr. Kaiser's opinion is unsupported by any objective evidence…..

*Id.*

When the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so. *Blakley*, 581 F.3d at 406. Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96–2p. An ALJ's failure to provide an adequate explanation for according less than controlling weight to a treating source may only be excused if the error is harmless or de minimis, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley*, 581 F.3d at 409 (quoting *Wilson,* 378 F.3d at 547). Here, Plaintiff argues that Dr. Kaiser's opinions were entitled to controlling weight and that the reasons stated by the ALJ for failing to abide by that presumption were not "good reasons" because "[t]here are multiple records contained in the exhibits to this case that are consistent with Dr. Kaiser's opinion." (Doc. 9 at 5-6, citing Tr. 332-335, 344-464).[3]

---

[3]Plaintiff's citation to a wide-ranging span of medical records, without citation to or discussion of any specific records that support Dr. Kaiser's opinions, is not helpful. Nevertheless, having reviewed all of the referenced records, the undersigned agrees with the ALJ that the relatively extreme lifting and walking limitations offered by Dr. Kaiser are inconsistent with the record as a whole and are not otherwise well supported. By way of example, Tr. 332-335 consists of a single office visit on April 18, 2018 to an APRN, during which Plaintiff complained of gout in his left hand with moderate swelling and tenderness, with an onset of symptoms approximately one week earlier. (Tr. 333). A brief, acute episode of gout in the left hand does not support a walking or standing limitation, or any particular lifting restriction.

7

I find no error. The ALJ's stated reasons are well-supported on the record presented and closely align with the factors specified in 20 C.F.R. § 416.927(c)(2)- (c)(6), including the treatment relationship, supportability with the record, consistency, and apparent tendency of Dr. Kaiser to base his opinions on Plaintiff's subjective reports in lieu of any objective examination findings. *See Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (noting that physician's conclusion regarding amount of weight plaintiff could lift regularly appeared to be based on plaintiff's own assessment rather than medical evidence). The ALJ noted that Dr. Kaiser was Plaintiff's treating physician and had been since at least 2016, but that Plaintiff had not treated with him frequently. He explained that Dr. Kaiser's opinion was not well-supported by any objective evidence (including diagnostic tests), and was also unsupported by Dr. Kaiser's own treatment notes or any physical examinations.

Dr. Kaiser's opinions also stood in marked contrast to all of the other medical opinion evidence and were wholly inconsistent with the record as a whole. Even though the other opinion evidence originated from consulting physicians as opposed to treating physicians, the ALJ explained why he was giving greater weight to the opinions of an examining consultant, Dr. Swedburg. Though frequently litigated, both regulations and case law make clear that an ALJ may give the greatest weight to the opinions of even a non-examining consultant in appropriate circumstances such as those presented in this case. *See* SSR 96-6p, 1996 WL 374180 at *3 (July 2, 1996); *accord Miller v. Com'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016). This case presents such a circumstance.

8

For the reasons discussed, I find no error in the ALJ's analysis of the medical opinion evidence or in the RFC limitations as determined. The testimony of the vocational expert, based upon the accurately hypothetical question first presented by the ALJ, constitutes substantial evidence to support the non-disability determination. See *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).

### III. Conclusion and Order

Accordingly, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** and that this case be **CLOSED.**

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge